Hemphill, Ch. J.
This is an action for the recovery of a tract of land. The plaintiff (who is appellee in this court) claims under a title issued by J. Antonio Navarro, one of the commissioners of the State of Coahuila and Texas for the distribution of lands, and'the 'defendant claims by virtue of locations under land certificates issued since the revolution. Judgment was given for the plaintiff, and the defendant, having appealed, assigns' for error :
1st. The ruling out by the court of that portion of defendant’s answer excepted to by the plaintiff. That portion of the answer set up a forfeiture of the land claimed by the plaintiff, on tiie grounds that the original grantor, Mansola, had not lived upon, cultivated, and improved the same, and also that the grantee had forfeited the land by abandoning the country to avoid a participation in the struggle for independence in the war between Mexico and Texas. We are of opinion- that there was no error in this ruling of- the court. The location was made by the defendant in 1849. The Constitution of tiie State, in section 4, article 13, requires the legislature to provide a method for determining what hinds may have been forfeited and escheated. No law prescribing the mode of ascertaining forfeitures has yet been adopted. The courts have not been authorized to permit, at tiie instance of individuals, inquiries into the causes of forfeiture of grants, and to annul them or recall the titles on proof that the forfeiture has been incurred; and there was no error-in striking out such portions of the pleadings as would have let in proof to establish facts of this character. That individuals cannot, since the adoption of tire State Constitution, by location, assert any right to lands previously granted on the grounds simply of forfeiture, was fully decided in tiie case of Hancock v. McKinney, and the principles of that decision arc conclusive in support of the ruling of the court now under consideration.
2d. The next assignment is that the court erred in permitting the plaintiff to introduce a translated copy of the original title to Mansola on deposit in the land office, certified to by E. Sterling Robertson as a correct translation, and with the certificate of tiie Commissioner of tiie General Land Office. The only ground in support of this objection deserving notice is, that the translation was not certified to by the commissioner but only by tiie translator of the General Land Office. The law declares that translated copies of all records in the land office certified to under tiie hand of the translator and the commissioner, attested with the seal of the General Land Office, shall be prima facie evidence in all cases in which the originals would be evidence. The instrument in question was certified as a correct translation by the translator in his officii11 capacity, and the commissioner certifies to the official capacity of the translator. The statute requires that tiie translated copies must be certified by both the translator and the commissioner, but does not prescribe that they shall attest tiie same facts. The mode in which they have respectively certified to this document is a compliance with the spirit and intent of the law, and as such was sufficient to authorize it to he used as evidence. The rational presumption is, at least the fact might be, that the commissioner is unacquainted with tiie Spanish language. There is no law requiring him to have such knowledge; *141 and if lie hare it not, it would be unreasonable to require him to certify as a fact that of which he is wholly ignorant. The correctness of tlie_ translation must depend on the fidelity and skill of the translator; and his official certifícale is the real basis upon which the credit and admissibility of the instrument. are supported. This document is certified in the customary mode of authenticating translations from the land office; and in the case of Herbert v. Bartlett's Ííeirs the objection now raised was well considered and adjudged to he without foundation ; and we are of opinion that the court was right in permitting the instrument to be read in evidence to the jury.
3d. The third assignment is involved in the first and need not be separately considered.
4th. The fourth assignment is the alleged error in refusing to give the jury the first, second, and third instructions asked by the defendant.
The first instruction enunciated, in substance, that it was for the jury to determine on the legal effect of the grant or title of the plaintiff. No argument is required to show that, as a legal proposition, this has no countenance in law.
The second was an abstract proposition not applicable to the facts of the case, and, if given, would have been well calculated to mislead the jury. If the vesting of the fee, under the grant, had depended upon the performance of some precedent condition, then'the instruction would have applied. But the conditions of this grant wore subsequent. The fee was vested, though subject to defeat on failure to perform the conditions. The title is perfect in the sense in which that term is used in contradistinction to imperfect or inchoate titles, that is, it required no further act of the granting power to its perfection.
This case was so fully discussed in cases decided at the last term that a reference to them will he sufficient without further examination. (Paschal v. Perez, 7 Tex. R., 348; Hancock v. McKinney, Id., 384; Edwards v. James, Id., 372.)
The third instruction asked is that the commissioner had no power to issue a title upon other conditions than those contained in the concession of the Government. The special variance between the concession and title issued by the commissioner is not stated. In the argument it was contended the title dispensed with the payment of dues required by the concession. There is some confusion relative to this matter on the face of the proceeding. The party, as it appears from the very obscure statements of bis application, petitioned for two sitios and a labor. But one sitio and labor were granted. The executive, in liis decree, recites that the concession is made in virtue of the information given by the ayuntamiento, and in accordance with the colonisation law of the 24th March, 1825, and with the 12th article of decree No. 128.
The information from the ayuntamiento was to the effect that the applicant was a native and resident of Bexar; that he was forty-two years of age; that he had given his services freely in all that had been required, and when the city was in danger from the barbarous Indians, bad voluntarily presented himself with arms for its defense. Under the 12th article of decree 128, (referred to in tlie concession,) the residents of the towns frontier to the savage tribes were.entitled to a remission of a portion of the dues on the grants of hinds, and a resident of forty years was exempted from the payment of any dues. The facts upon which the application rested, and which are recited in the concession, show that the benefits of the 12th article were asked for and intended to he granted. But notwithstanding such was the manifest intention apparent on the face of the grant, and such the positive requisition of law upon the facts in the petition, yet the executive directs the commissioner to classify the lands to show what the grantee must pay tire State, and for which payment the executive concedes the rights designated in the 22d article of the colonization law. The Governor had no authority, under the facts of this case, to impose, as a condition of the grant, the payment of any dues. By the 12th article of decree, 128, in" conformity with which the grant was intended to be ¡nade, the applicant was exonerated from such payment. The commissioner, in the title, with reference to the effect of the 12th article of the said decree *142 upon the-grant, declares that the grantee Was exempted from making any payment or acknowledgment to the State.
This declaration was,^beyond question, in conformity with law, and the implied condition in the concession that tlie grantee was liable to tlie payment of dues was illegal. The assumption of power in imposing such a condition was unwarrantable and not authorized by the law of the land. The grant itself was issued by competent authority, in the legitimate exercise of power, and is not vitiated by a condition which in contemplation of law is a nullity, and which should-bo treated as surplusage and without force or ell'ecf. The commissioner did not exceed liis power in fading to embody snob condition in the title; and there was consequently no error, 'under the faets of the case, in the refusal of the court to give the fourth instruction.
6th. The iifth ground for reversal is that (he court erred in giving judgment for the plaintiff upon the papers and facts before the court at"the trial.
This assignment lias not been discussed by tlie defendant. The grounds which might be urged in its support arc not very obvious. The facts 'and the papers have been considered with some attention, and if there he error in the judgment it is not apparent. The title to Mansoia was perfect, and his interest had, by conveyance, vested in tlie plaintiff. It was prior in time and superior in right to that of tlio defendant, and, on the faets, there seems no valid objection to the recovery.
There is a point raised in the brief which may with propriety be considered under this assignment, and it is this: that the title was only conditional and did not pass, the fee to tlie grantee; that the laud was specially reserved to the use of the General Government, and the grantee accepted it with this condition, and that the fee vested in Texas at the revolution. The words of the concession are, in substance, that the land is granted in the place designated by the petitioner, or in that which may best suit him, after the designation by the commissioner of the General Government, of a sufficiency for the payment of tlie debts due from the State to the Federation.
From 1.1 lose terms I should conclude that the laud designated by the petitioner, if finally accepted by him, was conceded without reservation; but if his selection was elsewhere it must be in subordination to the prior right of designation for tlie use of and in discharge of the debts due to tlie Federal Government. But the reservation was not so understood by the party or the commissioner. Tlie land designated by the applicant was deeded to him by title of possession, but with the express condition that it was subject to selection by the General Government, in discharge of its demands against the State. The title conveyed all the right that was in the State to tlie grantee, subject to de-feasance on a most remote and improbable contingency, and which did not arise during the subsequent existence of the Government, under which alone its occurrence was possible.
By the revolution this possible contingency against the perpetuity of tlie grant was brought to an end. The debts from the State of Coalmila and Texas and the demand of the Federal Government against tlie State, so far as they affected the Republic or State of Texas, were by the revolution alike extinguished. If the State or Republic became a creditor by tlie revolution, she became likewise a debtor; and it is not very probable that siie would select her own lands to pay her own debts, or that she would enforce any real or supposed liens against this or other lands granted since 1831 in payment oí such debts. If it'be even granted that she became a creditor by the revolution, yet no private individual lias authority to collect tlie demands due the Mexican Government, or to claim any lands by virtue of any contingent, supposed, hypothecary interest or right of choice which that Government may once have had in such lands, to secure the payment of its debt. To illustrate this point, let us suppose that the Mexican Government had continued to exist and that tlie laws, customs, and usages authorizing individuals to denounce lands (once granted) as subject to regrant had remained in force; yet no individual could have set up any pretension to a regrant of this laud on tlie *143 ground that the General Government had a right, if it chose, to have the land appropriated to the discharge of its obligations against the State. A denunciation on such grounds would have been at once dismissed.
Note 4i — Rivers v. Foote, 11 T., G62; Johnston v. Smith, 21 T., 722; Kilpatrick v. Sisneros, 23 T., 113; Bowmer v. Jlieks, 22 T., loo; Lufcer v. Mayfield, 2G T., 325; Howard v. Colquhoun, 28 T., 131.
K ote 45. — S pillars v. Curry, 10 T., 143.
Note 40. — Sun Antonio v. Lewis, ante G9.
Note 47. — Fulton v. Bayne, 18 T., 50.
• The remaining grounds, that the court, erred in the refusal to grant a new trial, has been disposed of in considering the previous causes for the reversal, and there being no error in the judgment, it is ordered that the same be affirmed.
Judgment affirmed.