### ELMS et al. v. GILES et al.
### No. 6066.

Court of Civil Appeals of Texas. Texarkana.

June 16, 1943.

Rehearing Denied July 1, 1943.

W. E. Jones, of Longview, Gerald C. Mann, Atty. Gen., Cecil C. Rotsch, Asst. Atty. Gen., and Fagan Dickson, Asst. Atty. Gen., for appellants.

Fountain, Cox & Sandlin and M. E. Sandlin, all of Houston, Bramlette, Levy & Bolton, of Longview, W. W. Mason, of Mexia, Turner, Rodgers & Winn and Frank J. Scurlock, all of Dallas, H. P. Smead, of Longview, Prentice Wilson, of Dallas, James B. Henderson and H. C. Walker, Jr., both of Shreveport, La., Barksdale Stevens and Robt. F. Higgins, both of Houston, W. F. Semple, Y. P. Broome and Donald Campbell, all of Tulsa, Okl., and Thompson, Walker, Smith & Shannon, of Ft. Worth, for appellees.

WILLIAMS, Justice.

This is a suit filed under the provisions of § 6, Art. 5421c, Vernon's Ann.Texas Statutes, further known as House Bill No. 9, Chapter 3, p. 465 of the Acts of the Regular Session of the 46th Texas Legislature, approved June 19, 1939.

W. C. Elms, Jr., as applicant, filed on September 20, 1939, with the county surveyor of Gregg County an application in duplicate, duly verified, to lease a certain area of land which applicant stated he believed to be vacant and unsurveyed land belonging to the free school fund of Texas; and therein described as being situated in Gregg County and bounded as follows: on the East by the Wm. Robinson H. R. Survey, on the South by the Henry Hathaway H. R. Survey, on the West by the Pewett & Turnbow leases, and on the North by the G. W. Hooper H. R. Survey. At a hearing upon the application had before the Commissioner of the General Land Office to determine whether a vacancy existed, the Commissioner on September 30, 1940, by his order and decree entered on said date, held that above area of land so alleged to be a vacancy was not in fact vacant. On December 26, 1940, within the 90 days period of time as provided for in subsection (d) of Section 6, supra, appellant, W. C. Elms, Jr., the applicant, filed this suit for the purpose of litigating the question of the existence of a vacant unsurveyed area. The field notes of the alleged vacant and unsurveyed land as set out in his petition described a strip 81 vrs. wide by 4800 vrs. long and is within the general description of the land set out in the application.

In Elms' original petition he named the Commissioner of the General Land Office of Texas, the Attorney General of Texas, and 258 others as defendants. He alleged that those so named except the Commissioner and the Attorney General "is and are claiming some character of right, title and interest and estate in and to said tract of land * * * or some part or parts thereof, adverse, prior and superior to and inconsistent with the aforesaid rights and claims of plaintiff"; "that long prior to September 20, 1939, the defendants Magnolia Petroleum Company, Humble Oil & Refining Company, Shell Oil Company, Stanolind Oil & Gas Company, Lucy Petroleum Company, W. D. Ambrose, C. F. Smith, W. L. Pickens * * * and the various other defendants herein named, drilled and have been operating wells upon this tract, * * * and/or have been receiving rents, royalties and proceeds of oil and gas taken therefrom * * *." Elms

alleged in detail the compliance and performance by himself, the County surveyor of Gregg County, the surveyor appointed by the Land Commissioner to make the survey, and the Land Commissioner of all the procedural steps and requirements of Sec. 6, supra; and the action of the Commissioner denying his application. His 1st, 2d and 3rd amended original petitions contained the same allegations except as to names of defendants. The sole purpose of his amended petitions was to add new parties, the 3rd amended petition containing names of more than 300 defendants. The group of some twenty later herein discussed and styled the Harley group was named in all of above pleadings.

On October 31, 1941, the State of Texas, through its Attorney General, intervened. Its plea reads as follows: "Now comes the State of Texas by and through its Attorney General, Gerald C. Mann, and on behalf of the Public Free School Fund of the State of Texas, files this, its intervention, pursuant to the provisions of House Bill No. 9, Acts of the 46th Legislature, 1939, Article 5421C, Sec. 5[6], subsection j, V.A.C.S., and respectfully requests this Honorable Court to instruct the District Clerk to notify the Attorney General of the State of Texas of the date set for any preliminary hearing herein and the date set for trial hereof."

From time to time motions to dismiss and pleas in abatement for want of parties defendant were filed, urged and renewed by various defendants. Some filed formal answers. After a hearing on renewed motions to dismiss and on renewed pleas in abatement, the court on October 14, 1942, sustained same. Findings of fact and conclusions of law have been filed. From the order of dismissal W. C. Elms, Jr., and the State of Texas have perfected their joint appeal.

Omitting parts, the decree entered reads:

"The court after hearing evidence for and against said motions and pleas on the twelfth, thirteenth and fourteenth of October, 1942, and after argument of counsel, did on the 14th day of October, 1942, decree as hereinafter indicated.

"In connection with the motion to dismiss * * * it appears to the court that the same defendants filed a similar motion on May 18, 1942, and that a hearing on the last mentioned motion took place in this court on June 2, 1942, which hearing was participated in by the plaintiff and the intervenor The State of Texas, at which time evidence for and against the motion was heard, and at the conclusion of which hearing the court sustained the motion to the extent that it was decreed by the court that all persons owning any right, title or interest in the alleged vacancy (specifically described in plaintiff's pleadings) were necessary parties to the suit, and the court granted to the plaintiff a reasonable time within which to make said persons parties to the suit and obtain legal process on them. Thereafter, this case was regularly set for trial for August 3, 1942, but said setting was cancelled on the court's own motion. The case was then regularly set for October 12, 1942.

"The court finds and concludes that:

"(a) All persons owning any right, title or interest in the alleged vacancy (and who are necessary parties to this suit) have not been made parties defendant to the suit.

"(b) Legal process has not been obtained on all persons owning any right, title or interest in the alleged vacancy (and who are necessary parties to this suit) and said necessary parties are not before the court by answer, appearance, or otherwise.

"(c) The plaintiff has been granted a reasonable time within which to comply with the order of June 2, 1942, and he has failed and refused to comply with the same.

"(d) The plaintiff has not prosecuted the suit with diligence.

"In connection with the pleas in abatement of defendants Tide Water Associated Oil Company, J. W. Harper, C. P. Byram, Marvin Umsted, Mrs. Edna Umsted, a feme sole, Mrs. Aubrey Umsted Becker and husband, R. P. Becker, Susie L. Wadley, Elloine W. Moseley, and W. M. Peyton, the court, after hearing evidence for and against said pleas, is of the opinion that the allegations in said pleas are true and correct and that the law and facts are with the movants.

"It is therefore ordered, adjudged and decreed by the court that this case be and the same is hereby dismissed."

In the joint brief filed by W. C. Elms, Jr., and the State of Texas it is asserted: (1) The court erred "in holding it had no jurisdiction of the suit because certain persons who claim to own leasehold and royalty mineral interests in the land described in the application for vacancy were not named in the application and were not

given notice as required by Sec. 6, supra"; (2) the court was in error in holding "that all persons claiming an interest in the land described in plaintiff's petition are necessary parties to a suit of this character to establish the existence of a vacant, unsurveyed area belonging to the Public Free School Fund"; and (3) the court's error in dismissing the suit on the ground that W. C. Elms, Jr., had not used reasonable diligence in preparing the case for trial and in the prosecution of same.

Subsection (c) of Sec. 6, supra, among other requirements provides that the applicant "shall also state the names and addresses of all owners or claimants of land or any interest therein and of leases of any character thereon, adjoining, overlapping, or including the land claimed to be vacant, so far as the same may be ascertained from the records of the General Land Office, and of the office of the County Clerk of the county in which the land is located and from the tax rolls of such county. * * *

"Upon filing of any such application with the Commissioner * * * the Commissioner shall forthwith cause a notice of intention to survey to be mailed to all persons named in the application as interested persons, and at the addresses given therein * * *. The notices shall be deposited in the Post Office at Austin, Texas, at least ten (10) days prior to the date fixed for the beginning of such survey. * * *

"A written report of the survey with field notes * * * shall be filed in the General Land Office * * *. The report shall state the names and the Post-Office addresses of all persons in possession of the land described in the application, and of all persons found by the surveyor to have or claim any interest therein. Any interested party may at his own expense cause any surveying to be done as he deems desirable. * * *

"Within sixty (60) days after the surveyor has made his report as provided herein, a hearing may be held before the Commissioner on the date fixed in a notice which he shall give to all persons thought to be interested parties and to all persons shown by the record of the proceeding to be interested parties, including the Attorney General, to determine whether there is a vacancy. Such notice shall be deposited in the Post Office at Austin, at least ten (10) days prior to the date fixed for such hearing. At the hearing, the State and each interested party, whether or not he received notice, shall have a right to be heard.

"(d) If the Commissioner should decide that the area so alleged to be a vacancy is not vacant, then the Commissioner shall * * * promptly notify the applicant of his finding by registered mail, * * * and then shall take no further steps with respect to same unless the existence of the alleged vacant area shall have been determined by a Court of competent jurisdiction. Thereupon, the applicant's application and all preference rights acquired thereby, to buy, or lease, such alleged vacancy shall become null and void, unless within a period of ninety (90) days after the mailing of such notice the applicant shall file suit in the District Court of the county wherein any part of such land is located, for the purpose of litigating the question of the existence of a vacant unsurveyed area.

"(e) If it shall appear to the Commissioner that the alleged vacancy is not in conflict with land previously titled, * * * the Commissioner shall give prompt notice of such finding to the applicant and to all those who have been previously identified as interested parties, and thereafter, subject to the further provisions hereof, such applicant shall have a right for one hundred and twenty (120) days to purchase or lease such * * *.

"(f) Any good faith claimant who ascertains that a vacancy exists or that a claimed vacancy may exist, or who has been notified by the Commissioner that a vacancy has been found to exist upon lands claimed by him shall, at any time, until ninety (90) days after a decision of the Commissioner declaring the existence of a vacancy, have a preference right to purchase or lease same by applying in writing to the Commissioner for such purchase or lease, and by furnishing such proof as may be satisfactory to the Commissioner that he is a good faith claimant. * * *

"(j) Any person, firm, or corporation aggrieved by any action taken by the Commissioner under the provisions of this Act, or with reference to any application to purchase or lease vacancies, may institute suit in the District Court of the county where any part of the land is situated, but not elsewhere, and there try the issues of boundary, title, and ownership of any alleged vacancy involved, as well as the

issues of the preference rights of such person, firm, or corporation, as herein provided. The plaintiff in such suit shall within thirty (30) days after the filing thereof cause a certified copy of the original petition therein to be served by any sheriff or constable of Travis County upon the Attorney General of Texas and the Commissioner, and cause such officer's return showing said service to be filed with the papers in said cause. Whether the Attorney General answers or intervenes in said cause or institutes suit in the first instance, following the filing of such application, the venue of all such suits shall be in the county where such land, or any part thereof, is located. When such litigation shall have been prosecuted to a final judgment, said judgment shall be binding upon the State of Texas. It shall be mandatory for the Attorney General to intervene in behalf of the State in such cases."

At the time Elms filed his application to establish the alleged vacancy, at the time this application was subsequently filed with the Land Commissioner and in all proceedings had before or by the Land Commissioner, those named in above decree with respect to presenting pleas in abatement of the suit owned an interest in land situated within the boundaries of the area described in the applications and in Elms' pleadings. During all such times, Tide Water Associated Oil Company owned a 1/4 interest in an oil leasehold estate in production, W. M. Peyton and Geo. L. Peyton owned and operated a 2.7-acre oil leasehold estate and the others who presented pleas in abatement owned royalty interests. An examination of the instruments of conveyances and assignments which had been filed and recorded in the deed records in the county clerk's office of Gregg County prior to the date Elms first filed his application to establish the alleged vacancy would have disclosed title to the respective interests in those above detailed. The said owners were not named in Elms' applications filed with the county surveyors or the Land Commissioner. Neither were they present or represented at any hearing or proceeding had with or by the Land Commissioner. No notice of any of the proceedings provided in Sec. 6, supra, was given them. At the time suit was filed and at the time the decree dismissing this suit was entered they still owned respectively above interests, except that of Geo. L.

Peyton which had descended upon his death to his wife.

Under the foregoing facts we are of the opinion and conclude that the owners as above enumerated except Mrs. Peyton were necessary parties to all the proceedings and hearings had with and before the Land Commissioner. The 1939 Vacancy Act expressly grants to such owners the right to be present and to be heard in the proceedings and hearings had before the Land Commissioner. To secure such rights of the owner to be present and heard, the act specifically enumerates the character of notices to be given the owner. By the use of the word "shall" in each of the provisions above quoted, the Act makes it mandatory that such notices be given. It follows that the requirements with regard to notice is a condition precedent which must be complied with so that the owner of land in the area alleged to be vacant may have the opportunity to secure his evidence and be prepared to meet the issue of an alleged vacancy in a hearing before the Land Commissioner. Section 8, the emergency clause of such Act, in substance, so expresses the intent of the Legislature.

Another group of some 20 alleged owners or claimants of an interest in the land, named in the various motions to dismiss, who had been named by Elms as owners or claimants of an interest in the land in his application filed with the county surveyor and the Land Commissioner and who had been named party defendants with others in his original and several amended original petitions as owning or claiming an interest in the land were not served with legal process to answer this suit and had not answered. As found by the trial court, W. B. Harley, one of this number, was in actual possession of part of the land affected by the alleged vacancy; W. M. Peyton with Lelia Peyton was in actual physical possession of a leasehold estate of 2.7 acres, part of which is affected by the alleged vacancy, and that the others owned an interest in land which would also be affected by the alleged vacancy.

With respect to the second point presented that the persons (Harley group) described in petition as claiming an interest in the land were not necessary parties, appellants contend that this suit is an action in trespass to try title and that Article 7370, R.C.S. 1925 discussed in 41 T. J. p. 613, § 123, is applicable, which reads: "The

only necessary party defendant in an action in trespass to try title is the person in possession, if the premises are occupied, or the person claiming title thereto, if the premises are unoccupied." If this suit should be treated as an action in trespass to try title, Harley and the Peytons in actual physical possession of a part of the area were necessary parties. But it does not become necessary in the disposition of this second point to determine if the instant suit should be construed as an action in trespass to try title. The authority to file and prosecute a suit for the adjudication of an alleged vacancy as here presented in plaintiff's petition is derived from the provisions of section 6, supra. The suit is "for the purpose of litigating the question of the existence of a vacant unsurveyed area." Subsection (d). In such a suit, as provided by Subsection (j), the court shall "try the issues of boundary, title, and ownership of any alleged vacancy involved, as well as the issues of the preference rights of such person, firm, or corporation" as provided in the Act.

The Act is clear and specific in requiring that all interested persons be parties to all the proceedings from the initial step taken by the applicant down to and including the hearings had before and with the Land Commissioner. If interested persons as mentioned in Subsection (c) are necessary parties to the proceedings before the Commissioner, and if issues of "boundary, title, and ownership", and preference rights granted between a "claimant" and a "good faith claimant" as defined in the Act are to be determined in court, then logic and reason lead us to the conclusion, and we so hold, that the same interested persons are necessary parties to the special statutory action here involved. For additional reasons see McDonald v. Humble Oil & Refg. Co., Tex.Civ.App., 78 S.W.2d 1068; Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472; Ball v. Cundiff, Tex.Civ. App., 127 S.W.2d 502.

The court has filed extensive findings of fact in support of the court's conclusions that "plaintiff has not prosecuted the case diligently" and "that plaintiff has been granted a reasonable time within which to comply with the order of June 2, 1942." We are of the opinion that the facts disclosed in the statement of facts and the dates and character of pleadings contained in the transcript supports the above conclusion.

We think it sufficient to allude briefly to the high points only bearing upon the conclusion that "plaintiff has not used reasonable diligence in preparing the case for trial and in the prosecution of same." Elms filed his petition December 26, 1940, in which he named 258 defendants. The first citations issued January 31, 1941, being seven in number and for oil companies operating oil and gas leasehold estates. No other steps were taken to secure issuance of citations and service on the others named in the petition until August 19, 1941. Prior to August 19, 1941, this inactivity of plaintiff was brought to the attention of the trial court and plaintiff's attorney by some of the parties whose oil payments had been held up. In motions to dismiss filed in February 1942, heard in the March 1942 term of court, complaint was again urged to the condition of the service that plaintiff had caused to issue on August 19th and that plaintiff was not making the proper effort to get the case in shape for trial. On May 18, 1942, additional motions to dismiss were filed, which set out the names of 36 resident defendants and their respective addresses for whom personal citations had not been issued; 17 resident defendants for whom citations had once been issued but never served; 14 persons alleged to own an interest in the area who had not been named as parties defendants; and otherwise pointed out the condition of the record with respect to the condition of returns of service on others.

On June 2, 1942, a hearing was had on the last mentioned motions to dismiss, in which plaintiff was allowed a reasonable time within which to obtain service on all persons owning or claiming any right, title or interest in the alleged vacancy. July 27, 1942, further motions to dismiss were filed in which detailed information in regard to necessary parties and their addresses were given. These motions together with some filed October 5, 1942, set out substantially the same information as had been set out in the motions to dismiss filed May 18, 1942, with exception that service on some had been obtained, some had answered without service, and some had waived service. Under this record, above briefly set out, the judgment of October 12, 1942, dismissing this suit upon the grounds stated will not be disturbed. Brown v. Meyers, Tex.Civ. App., 163 S.W.2d 886; Texas Rules Civil Procedure Nos. 37 and 39.

The State takes the position that if the pleas in abatement were properly sustained, the proper judgment would have been to set aside the order of the Commissioner of the General Land Office refusing the application for a vacancy and to dismiss the case without prejudice to the right of appellant to file a new application and without prejudice to the right of the State through its Attorney General to file a new suit under the authority of Article 5240, Vernon's Ann.Civ. Statutes, citing Perkins v. United States & F. G. Co., Tex.Com.App., 299 S.W. 213; Turnbow v. J. E. Bryant Co., 107 Tex. 563, 181 S.W. 686; 15 Tex.Jur. p. 288. In this connection, the State advances the theory that if the judgment of dismissal should be a final judgment, it may have the effect of terminating the litigation as to both appellants in that the 90-day period for filing suit as provided in Section (d) has already expired and Subsection (j) provides that "when such litigation shall have been prosecuted to a final judgment, said judgment shall be binding upon the State."

■ It is to be observed that Subsection (j) provides that "It shall be mandatory for the Attorney General to intervene in behalf of the State." To the end that the State's interest will be protected in such a suit, Subsection (j) provides, "The plaintiff in such suit shall within thirty (30) days after the filing thereof cause a certified copy of the original petition therein to be served * * * upon the Attorney General of Texas and the Commissioner [of the General Land Office], and cause such officer's return showing said service to be filed with the papers in said càuse." To the end that the State may have timely notice of the claimed vacancy and to the end that the State's interest may timely be protected, Section 6, supra, in Subsection (c) further requires the Commissioner to "forthwith cause a notice of intention to survey to be mailed * * * to the Attorney General of Texas"; and after the report of the survey has been returned, the Commissioner "shall give * * * notice * * * to * * * the Attorney General" of the hearing on such surveyor's report; and "at the hearing, the State * * * shall have a right to be heard." Plaintiff alleged that all the foregoing notices were timely given by the Commissioner to the Attorney General as required by Section 6 and that service of citation with certified copy of his petition thereto

attached was timely had upon the Attorney General and the Commissioner. The State did not elect to file an intervention in the nature of a separate action in trespass to try title, but merely intervened and submitted to the jurisdiction of the court, as reflected in its pleadings hereinabove set out.

It is thought that under the express provisions of Section 6, supra, and the record hereinabove set out, the State is bound by the judgment as entered.

The judgment is affirmed.