The STATE of Texas, Appellant,

v.

SUNRAY DX OIL COMPANY et al., Appellees.

No. 786.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 21, 1973.

Rehearing Denied Jan. 17, 1974.

J. Milton Richardson, Austin, for appellant.

Dave McNeill, Jr., Vinson, Elkins, Searls, Connally & Smith, Houston, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit in the nature of a trespass to try title action brought by the State of Texas to recover lands for the benefit of the public free school fund. Two tracts of land are at issue. They are known as the Vairin tract and the Fernet tract located near the confluence of the Guadalupe and San Antonio Rivers in Victoria County, Texas. These two tracts were granted by Commissioner Vidauri as part of the Hewitson and Power Colony pursuant to the colonization of this particular area by Mexico in 1834. The defendants filed answers of not guilty, general denial, res judicata, lack of jurisdiction, and various other pleadings and exceptions. Finally, the defendants filed their motion for summary judgment, which was granted. The State of Texas has perfected its appeal from this adverse judgment to this Court.

In summary judgment cases where the merits of the case have not been reached and the summary judgment rests upon the strength of the pleadings before the Court, we must follow the well established rules that require us to assume that all material facts alleged are true. The burden of proof is on the movant and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. The summary judgment can stand only if it is apparent from the record that there is no genuine issue as to any material fact and that movant is entitled to a judgment as a matter of law. Rule 166–A, Texas Rules of Civil Procedure; Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.Sup. 1965); Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970).

The defendants set out several theories as a basis for the granting of the summary judgment in the trial court. They can be summarized under three basic categories: 1) the prior decision of this Court in Strong v. Sunray DX Oil Co., 448 S.W.2d 728 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.) is res judicata as to title; 2) the Attorney General has no statutory or constitutional grounds to claim this land, and in any event the State is bound by the decision of the land commissioner of the General Land Office; and 3) the State has lost its right to assert a forfeiture by its long delay and by placing an unreasonable burden on the defendants which would deprive them of property without due process of law in violation of the State and Federal Constitutions. The State of Texas on appeal assigns as error the action of the trial court in granting the summary judgment on all of the grounds asserted by the appellees.

The State contends that August L. Fernet and Joseph Vairin, the grantees of the two subject tracts, were never residents or citizens of the Republic of Mexico;

that the Commissioner of the Power and Hewitson Colony had no legal authority or power to issue title to the two leagues of land to them; and that as a consequence, the purported grants to them were void ab initio and/or were voidable. This contention is without merit. The original validity of the grants cannot be impeached where they were issued by competent authority. The Supreme Court of Texas was faced with this same contention in an early case. The court said:

"That the grantee possessed all the requisite legal qualifications to entitle him to the grant, and that the grant itself concludes all after inquiry upon the subject, has been repeatedly decided. This precise question was decided in the case of Johnson v. Smith, 21 Tex. 722, where it was held, that *evidence cannot be admitted to prove that the grantee had not brought his family to the country, and had not, in fact, become domiciled here for the purpose of showing that he was not entitled to the grant . . .* ; that the original validity of a grant, regularly issued by competent authority, cannot be thus impeached." Bowmer v. Hicks, 22 Tex. 155, 161 (1858) (Emphasis added.)

The validity of official acts in extending titles under the original colonization laws must be presumed to be valid. The descriptive language in the grants described how the grantor placed the parties in possession. This Court held in Strong v. Sunray DX Oil Company, supra, that Vairin and Fernet were placed in juridical possession of their respective tracts. For instance, their grants recited that "placing him in possession of that which he represents for himself and his principal of the leagues of land that he has designated, he has taken quiet and peaceful possession, in which act he had made all the necessary demonstrations of true ownership." If there was doubt as to the validity of these Mexican grants, they were resolved by the act of juridical possession. State v. Balli, 144 Tex. 195, 190 S.W.2d 71 (1944). This presumption is especially applicable where

the acts of the authorities remained unchallenged for a great length of time. Sideck v. Duran, 67 Tex. 256, 3 S.W. 264, 268 (1887); State v. Balli, supra; 46 Tex.Jur.2d Public Lands § 24. In Barrow v. Boyles, 122 Tex. 416, 61 S.W.2d 783, 787 (1933), the court said:

"Should we accept the plaintiff in error's views we should adjudge that the officials of no less than three governments, including our own Texas commissioners of the general land office and Attorneys General, have been derelict in duty. . . . "

We hold that the original title grants were not void as a matter of law.

The Fernet and Vairin tracts which the State seeks to recover are the same grants that were involved in the Strong v. Sunray DX Oil Company suit, supra. The State seeks to avoid the binding effect of the final judgment in Strong by showing that title to these grants was not placed in issue, and was not a part of the prior lawsuit because an order for separate trial was entered by the trial court. The defendants take the position that even if title to the Fernet and Vairin grants was not in issue in the Strong case, the State was required to assert and have adjudicated all of its existing claims to such grants. Having let the case go to final judgment without doing so, it is barred. We agree. The Supreme Court said in Ogletree v. Crates, 363 S.W. 2d 431, 435 (Tex.Sup.1963), "The rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former trial, as well as those which were actually tried."

The particular land involved is shown by a map attached to Strong's original petition. It was reproduced in the opinion in the Strong case on pages 752 and 753 (448 S.W.2d 728). This Court held, among other things, that there was no vacancy in the area of the Fernet and Vairin tracts because a system of surveys beginning at the confluence of the San Antonio and Guad-

alupe Rivers bound the Travieso tract (number two) to the Valdez (number one) which was at the confluence of the two rivers. The Vairin (number three) was bound to the Travieso, and the Fernet (number four) to the Vairin. See Plat 2 on page 735 (448 S.W.2d 728) of the opinion. In the prior suit, Strong would pull apart these surveys and place the vacancy between the Vairin and the Travieso tracts as indicated in Plat 1 of the opinion on page 732. (448 S.W.2d 728).

In the Strong case, the claimant alleged that all lands within the August L. Fernet and Vairin surveys (as properly located on the map attached to the petition) "are now and do constitute public free school lands to which the State of Texas has *full title*".[1] He went on to allege that *"the State of Texas now owns* the Fernet and Vairin survey and the unpatented and unsurveyed lands here above described". In his vacancy suit Strong claimed for himself and the State of Texas all the right to the oil, gas and minerals thereunder. He alleged that the land was vacant and unsurveyed and subject to lease and sale by virtue of Article 5421c, Vernon's Ann.Civ.St. He contended that he brought the suit "for the purpose of litigating and deciding boundary, *title*, and ownership of the land". The prayer to his petition asks that the trial court adjudicate and decree that all the land (including the Fernet and Vairin grants) was vacant, unsurveyed school land belonging to the school fund and that he be awarded *all of the right, title, and interest* to said land as he may be entitled. The State of Texas intervened in the Strong case and asked that the facts be decided, and if they showed vacancies existing, the public free school fund was entitled to recover them. The State later filed an amended petition in intervention by which it *sued in trespass to try title to recover all of the land,* expressly including the Fernet and Vairin tracts. Still later, the State amended its plea to eliminate the trespass to try title action but still prayed that if the facts as to the area covered by the Fernet and Vairin tracts show that such grants are State owned lands, the State should be entitled to the recovery of such lands. The pleading of the vacancy claimant, as well as that of the State of Texas, placed the questions of title, boundary, ownership, and vacancy in issue. The purpose of the vacancy suit was to claim the lands for the State of Texas and the public free school fund. The individual claimant who sought to prove the vacancy was given statutory priority to purchase the lands back from the State, if successful. As a result, the state must intervene in such suits under Art. 5421c. It is in the nature of a compulsory counterclaim under Rule 97(a), T.R.C.P. Article 5421c, Sec. 6(j) reads in part: "When such litigation shall have been prosecuted to a final judgment, said judgment shall be binding upon the State of Texas. It shall be mandatory for the Attorney General to intervene in behalf of the State in such cases."

The State contends that a suit under Article 5421c, Sec. 6(j) is not necessarily a suit in the nature of a "classic" trespass to try title suit and that the question of title to the Fernet and Vairin grants were severed from the Strong case by the defendants' motion and the court's order.

The defendants filed a motion for a separate trial under Rule 174(b), T.R.C.P., contending that there should be a separate trial of the issues relating to whether or not there are vacant lands as alleged in Strong's petition, including the issue of boundaries with respect thereto, from a trial of the issues relating to whether or not some of the defendants are good faith claimants, whether or not improvements have been made in good faith, and the issues relating to the ownership of the production of oil and gas. The Court granted the motion and ordered that the issues of the existence or non-existence of vacancies be separately tried and determined, before the court tried any other issues in the

1. Emphasis supplied throughout this opinion.

cause. Boundary was considered determinative of whether the vacancies existed or not. The trial court ordered the other issues deferred. Trial on the boundary issue proceeded and judgment was rendered that Strong and the State of Texas take nothing since no vacancy existed. The Court's judgment stated that:

"(T)he Court proceeded to try separately such issues, and thereupon came the plaintiff, Guerry Strong, by his attorneys of record and in person, and came also the State of Texas as intervenor, by its Attorney General, and also came all of the above mentioned defendants who are interested and involved in such separate trial and who claim *titles* and interests in the areas of alleged vacancy, as this judgment has heretofore enumerated such defendants, through their respective attorneys of record; and all parties interested in this separate trial being present, represented and ready, a jury was duly impanelled and selected, and this cause proceeded to trial."

The judgment further recited that after it had granted its instructed verdict that:

"It further appearing to the Court that there is no *untitled* or vacant land under plaintiff's Mineral Application No. 56233, and that the J. Vairin Survey, Abstract 123, and the Maria Josefa Travieso Survey, Abstract 114, as a matter of law adjoin and have a common line, and there is likewise no untitled or vacant land under plaintiff's Mineral Application No. 56234, and that said Maria Josefa Travieso Survey as a matter of law is adjoined. . . ."

Continuing further the judgment stated:

"And it further appearing to the Court that the determination that no vacancy and no *untitled* or unpatented land exists in the areas mentioned requires a final disposition of this cause as to all parties hereto and *makes unnecessary the determination of any other matters or issues*

*raised by the pleadings in this cause;* And it further appearing that judgment should be rendered that plaintiff take nothing and that the *intervenor, the State of Texas, likewise take nothing in this cause;*"

And finally the judgment recited:

"That all relief prayed for and requested by plaintiff be in all things denied and refused."

The defendants' major contention is that titles to the Fernet and Vairin tracts were put into issue in the suit entitled "Strong v. Sunray DX Oil Company," and that the State was required to assert and adjudicate all of its existing claims to them at that time. Since the State let the case go to final judgment without adjudicating title or accepting and reserving the right to try the issue of title by appeal in Strong v. Sunray DX Oil Company, it is now barred.[2]

Although the original vacancy suit in Strong was not brought under the "classic" pleadings known as trespass to try title, the statute (Art. 5421c Sec. 6(j)) expressly considers the issue of title within the scope of the vacancy suit. The statute reads:

"Any person, firm, or corporation aggrieved by any action taken by the Commissioner under the provisions of this Act, or with reference to any application to purchase or lease vacancies, *may institute suit in the District Court . . . and there try the issues of boundary, title, and ownership of any alleged vacancy involved*, as well as the issues of the preference rights. . . ."

■ Under Article 5421c, Sec. 6(j), V. A.C.S., the word "may" indicates that the legislature did not wish to force the issue of title on the parties in a vacancy suit. The door was clearly left open however so that if the parties wanted the issue of title and ownership to be determined, they could do so. The State of Texas contends that its intervention was passive only, and di-

---

**2.** The State of Texas filed a separate appeal in Strong v. Sunray DX Oil Company, supra.

rects our attention to its final amended pleading which reserved into the State the right to file further affirmative pleadings and intervention after a full study of all of the facts. We hold this contention is totally without merit. The statute as previously quoted makes the intervention mandatory and any decision by the courts are binding against the State. The purpose of having the attorney general intervene is to protect the State's interest and not to "observe" the vacancy claimant. Camp v. Gulf Oil Co., 122 Tex. 383, 61 S.W.2d 773 (1933); State v. Stanolind Oil & Gas Co., 190 S.W.2d 510 (Tex.Civ.App.1945, writ ref'd); Elms v. Giles, 173 S.W.2d 264 (Tex.Civ.App.—Texarkana 1943), affirmed 174 S.W.2d 588.

■ It is true that the trial court in Strong ordered a separate trial on the various issues. The order was entered under Rule 174(b). This order did not amount to a severance as the State seems to argue. There has always been some confusion between separate trials and severance. The Supreme Court recognized this and tried to correct the confusion in Kansas University Endowment Assoc. v. King, 162 Tex. 599, 350 S.W.2d 11, 19 (1961) wherein the court stated:

> "A severance divides the lawsuit into two or more independent causes, each of which terminates in a separate, final and enforceable judgment. The separate trial contemplated by Rule 174 results in an interlocutory order determining the claims or issues so tried, *but there is only one final judgment which is entitled after all claims and issues involved in the suit have been tried.*" Id. 350 S.W. 2d at 19. (Emphasis added.)

In *Strong*, there were no true severances. There was not a second numbered or styled case. The court did not order a severance under Rule 41, T.R.C.P. There was only one final judgment, which disposed of all issues and parties. To construe all of the parts of the judgment consistent with the trial court's action leaves but one result— that the issue of title may have been set aside temporarily for a separate trial, as

Rule 174(b) authorizes, but the issues of title, boundary and vacancy were brought back together in the final judgment which declared that "no vacancy and *no untitled* or unpatented lands exists in the areas mentioned . . . (And) that all relief prayed for and requested by plaintiff be in all things denied and refused."

Although the State may not have placed in issue the precise question concerning the title to the Fernet and Vairin tracts as the State raises now, the pleadings, as well as the nature of the suit, permitted it to do so. The issues of title were tied to the claim of Strong against these defendants.

The Supreme Court was called upon to test the effect of a matter previously determined. In Abbott Laboratories v. Gravis, 470 S.W.2d 639, 642 (Tex.Sup.1971), the court said:

> "The Latin phrase 'res judicata' means that the matter has been adjudged; a thing judicially determined; or a matter settled by judgment. The principle of res judicata is an old one founded upon public policy. Its function is to expedite justice by putting an end to litigation and to preserve the sanctity of judgments. As relevant here, an existing final judgment rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit. (citing authorities) Further, *the rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried.* (citing authority) Stated differently, a party cannot relitigate matters which he might have interposed, but failed to do so, in an action between the same parties or their privies in reference to the same subject matter. (authorities)."

■ The doctrine of res judicata operates to preclude a litigant from relitigating an issue which has been previously raised

or could have been raised and decided against him. The effect of the rule is to bring about a finality to a claim or demand in controversy, including parties in privity with them, not only as to matters which were offered and received to sustain or defeat a claim or demand, but as to any other admissible matter which might have been offered for that purpose. Marange v. Marshall, 402 S.W.2d 236 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd, n. r. e.).

■ It has been thoroughly settled in this State that a take nothing judgment in a trespass to try title suit has the effect of adjudicating that land to the defendant. Latham v. Dement, 409 S.W.2d 429 (Tex. Sup.1966); Permian Oil Company v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564 (1934). The Supreme Court in Permian said: "A judgment cannot be contradicted by showing that the issues raised in the case in which it was rendered were not in fact decided. . . ." Id. 73 S.W.2d at 498. In a passage of particular application to the case before us the court said,

"An issue is a question in dispute between the parties to an action, and in the courts of this state it is required to be presented by the pleadings . . . (T)he leading question presented was one of title, and the fact that the determination of it may have depended on a question of boundary could not change the character of the vital issue of the case;" Id. 73 S.W.2d at 499.

In Trigg v. Whittenburg, 129 S.W.2d 472, 474 (Tex.Civ.App.—Amarillo 1939 writ ref'd), a suit had been brought to declare a vacancy which resulted in a final judgment of "no vacancy". A subsequent suit was brought to recover a part of the land on the ground that the patent was void. The court said:

". . . While the opinion of the Court of Civil Appeals shows that the only questions discussed related to vacancy, there is nothing in the opinion or the decree based thereon which preserved to the State of Texas or to Ed Trigg any right to thereafter assert title to the same land under a different theory of recovery. There is equally absent from such opinion and the decree any language showing that the usual and ordinary result of a failure to establish title should not be binding upon the State of Texas and the plaintiff Trigg. In Anderson, Clayton & Co. et al. v. State, 122 Tex. 530, 62 S.W.2d 107, 110, Judge Sharp, speaking for the court said:

'* * * where a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, * * *'

It is our opinion that article 7391 of the Revised Civil Statutes of Texas is controlling of the situation herein involved. Such statute reads as follows: 'Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming from, through or under such party, by title arising after the commencement of such action.'

This statute merely enacts into law the equitable rule that there should be an end to all litigation. The language of this article makes it incumbent upon a litigant to present in the first instance all the reasons he has to offer as a basis for recovery. No new and independent rights having accrued to him after such judgment he is not permitted to maintain another suit seeking to recover the same property upon some theory not advanced in the former action. To permit such a practice would be tantamount to the abolition of final judgments."

The State cannot argue that title was not a "vital issue". It is not proper for the State to impeach and contradict the trial of the vacancy case by now attempting to produce evidence to the effect that title was not tried in the former suit, but that it should be permitted to be tried now. To hold otherwise would mean that a boundary determination between surveys

would be unimportant and have no effect. The defendants were entitled to a final judgment forever conclusive on all claims of the State. Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97 (1894); Hejl v. Worth, 161 Tex. 609, 343 S.W.2d 266 (1961). See Hodges, Collateral Attack on Judgments, 41 Tex.Law Rev. 163, 189 (1962). Art. 7391 V.A.C.S.

 We hold that title was in issue in "*Strong*", the vacancy suit. Whether the State failed to insist upon its right to try all issues is of no concern at this late date. To allow boundary, title original ownership and vacancy to be tried in separate lawsuits would place an unfair burden upon the defendants. McKamey v. Aiken, 118 S.W.2d 482 (Tex.Civ.App.—San Antonio 1938, writ dism'd). Article 5421c, V.A.C.S. does not contemplate that the State of Texas can simply hang on to the coat tails of the vacancy claimant. It requires the State to prosecute its case actively on its own, on pain of final judgment being entered against it. McKenzie v. Frost, 448 S.W.2d 520 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.). See Rule 97, T.R.C.P.

In State v. Stanolind Oil and Gas Company, 190 S.W.2d 510 (Tex.Civ.App.1945, writ ref'd.), the vacancy case was called for trial. The vacancy applicant was unprepared and without expert witnesses. The State attempted to get out of the case by motion to dismiss but it was not allowed to do so. The Court said:

"We are of the opinion that the provisions of Article 5421c place very definite responsibility upon the Attorney General in regard to his duties in a vacancy suit and that they are in no wise dependent upon the action or conduct of the plaintiff, and that the purpose of requiring the Attorney General to intervene in such suits was to protect the State's rights and recover in proper cases the school lands of the State, and not for the purpose only of observing the vacancy claimant in the conduct of such cases and having such cases dismissed when the claimant failed to properly prosecute

same. We can not overlook the fact that the land owners have the same rights in this character of litigation as does the State or the vacancy claimant, especially when it appears, as it does from the record in this case, that the claimants and their predecessors in title have claimed the lands in controversy, feeling secure in the boundary lines of their property for more than a hundred years. When, under such circumstances, a vacancy suit is filed we see no reason for denying to the land owners the right to have the question of their title determined and settled once and for all without being subjected to the constant fear or dread that such suits once filed and dismissed through no fault of their own may soon be filed again and continued to be so filed and dismissed until some vacancy claimant diligently prosecutes his suit to final judgment." Id. at 512.

Our holdings herein make it unnecessary to consider appellant's other points of error.

The judgment of the trial court is affirmed.