PERMA STONE–SURFA SHIELD
COMPANY, Appellant,

v.

James MERIDETH and Dixie D.
Merideth, Appellees.

No. 04–87–00195–CV.

Court of Appeals of Texas,
San Antonio.

June 15, 1988.

James N. Higdon, Bass & Higdon, Inc.,
San Antonio, for appellant.

Thomas F. Adkisson, Steven C. Hilbig,
San Antonio, for appellees.

Before BUTTS, CANTU and
REEVES, JJ.

## OPINION

REEVES, Justice.

This appeal concerns a counterclaim based on the Deceptive Trade Practices Act (DTPA) brought by the appellees (Merideth), which was tried after the appellant (Perma Stone) was awarded an interlocutory summary judgment on a sworn account. The questions raised in this appeal are: (1) the trial court's exclusion from the DTPA action of admissions deemed in the sworn account action; (2) the jury's finding that the counterclaim was brought in good faith; (3) the sufficiency of the evidence supporting the attorney fee award to Perma Stone; and (4) the adequacy of Perma Stone's summary judgment proof concerning its right to foreclose on Merideth's homestead.

Perma Stone sued Merideth on a sworn account, for breach of a home improvement contract, for quantum meruit for the improvements, and to foreclosure on a materialman's and mechanic's lien. Perma Stone served Merideth with a request for admissions and interrogatories to which no answers were filed. By failing to answer, Merideth admitted, among other things, the following:

(1) Merideth received the goods, wares, merchandise, and services at the price agreed upon by the parties;

(2) that the prices charged for the items and services were the usual and customary prices at the time when delivered and in the county where delivered;

(3) the principal amount owing to Perma Stone by Merideth was $9,700.00; and

(4) the items contracted for and the services received by Merideth from Perma Stone conformed to all representations and warranties made by Perma Stone to Merideth.

The admissions were never withdrawn. *See* TEX.R.CIV.P. 169(2).

Merideth filed a general denial and a counterclaim that alleged defective workmanship and violations of the DTPA. Merideth also sought a cancellation of a lien on the premises. Perma Stone and Merideth filed motions for summary judgment. Judge Solomon Casseb Jr. heard both motions, denied Merideth's, and granted Perma Stone judgment on all damages sought except attorney fees. Perma Stone was awarded $11,024.00 in actual damages; interest on that sum at 14.5% per annum, from November 24, 1986, until paid; and a foreclosure on the Merideth property. This interlocutory summary judgment was signed and entered. The DTPA portion of the lawsuit was assigned to the Honorable Carol Haberman.

In the trial on the counterclaim, over Perma Stone's objection, Judge Haberman: (1) refused to permit the introduction of the deemed admissions into evidence; and (2) admitted evidence that contradicted them. The jury found that Perma Stone failed to comply with the terms of its contract with Merideth and local law, and that those actions were unconscionable, done knowingly, and were a producing cause of damages to Merideth. The jury also found that the work performed by Perma Stone was not done in a good and workmanlike manner.

The final judgment incorporated the summary judgment. It also awarded Merideth $6,707.00 in actual damages, $1,000.00 in statutory damages, and attorney fees under the DTPA. Perma Stone was also awarded attorney fees. After offsets were made, Perma Stone was left with a judgment in its favor for $3,365.58 with interest thereon at the rate of 14.5% interest per annum from December 5, 1986, until paid.

## EXCLUSION OF DEEMED ADMISSIONS FROM DTPA ACTION

■ Perma Stone contends that Merideth's DTPA counterclaim was foreclosed as a matter of law by the summary judgment granted Perma Stone. Perma Stone contends that the summary judgment, by necessity, resolved all issues relating to its performance of the construction contract. It reasoned that if that had not been the case, it would not have been entitled to the amount pleaded and proved for the materials and work done on the project. Meri-

deth responds that bringing Perma Stone's claim to a final determination, except for its attorney fees, and separating the DTPA action severed the two causes of action. Consequently, the DTPA claim was no longer a "pending action", which prohibited the admissions' use.

TEX.R.CIV.P. 169 provides, in part:

1. At any time after the defendant has made appearance in the cause ... a party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 166b ...[1]

2. Any matter admitted under this rule is conclusively established as to the party making the admission unless the court on motion permits withdrawal or amendment of the admission.[2]

Merideth's failure to timely answer the request for admissions, to file written objections, or to file a motion to file the answers late resulted in the admission of the questions submitted. It was not necessary for Perma Stone to obtain an order deeming the questions admitted. *Culp v. Hawkins*, 711 S.W.2d 726, 727 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

Although Tex.R.Civ.P. 174(b) authorizes trial courts to order separate trials, that does not alter the fact that Perma Stone's cause of action and Merideth's DTPA action arose out of the same transaction. Merideth's DTPA action was a compulsory counterclaim. Tex.R.Civ.P. 97(a) provides:

A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

*See Bailey v. Travis*, 622 S.W.2d 143 (Tex. Civ.App.—Eastland 1981, writ ref'd n.r.e.).

In *Kansas University Endowment Ass'n. v. King*, 162 Tex. 599, 350 S.W.2d 11, 19 (1961), the supreme court distinguished "severances" from "separate trials." It considered TEX.R.CIV.P. 41, which addresses severances. Rule 41 provides that "any claim against a party may be severed and proceeded with separately." A severance divides a lawsuit into two or more independent causes, each of which terminates in a separate, final, and enforceable judgment. The separate trial contemplated by Tex.R.Civ.P. 174 results in an interlocutory order determining the claims or issues tried, but there is only one final judgment which is entered after all claims and issue involved in the suit have been tried. *Id.*

■ A severance is proper only if the suit involves two or more separate and distinct causes of action. *Id.* Each of the causes into which the action is severed must be such that each might properly be tried and determined as if it were the only claim in controversy. *Id.* Merideth's DTPA action, therefore, should not have been severed since it arose out of Perma Stone's suit on the sworn account and the two suits did not involve separate and distinct causes of action.

■ We also conclude that the trial court erred in preventing the deemed admissions from being considered in the DTPA action. Merideth admitted that the contracted materials furnished were received in good condition at the price agreed to, the price of the materials and the service were the usual and customary prices, Merideth owed Perma Stone the principal amount of $9,700.00 under the contract, and the items contracted for and the services received by Merideth conformed to all representations and warranties made by Perma Stone.[3]

---

1. Rule 166b 2(a) Parties may obtain discovery regarding any matter which is relevant to the subject matter in the pending action whether it relates to the claim or defense of the party seeking discovery.

2. After the entry of the final judgment, Merideth filed a motion to withdraw the admissions, which motion was denied.

3. Merideth asserts in a cross point that Perma Stone failed to object to the order severing the suit on the sworn account from the DTPA action, thereby waiving error, in not treating it as

The admissions made by Merideth precluded, as a matter of law, the finding that Perma Stone violated the DTPA.

## THE COUNTERCLAIM'S MERIT

■ The jury found that the counterclaim had not been brought in bad faith or for the purpose of harassment. Perma Stone contends that Merideth's counterclaim was brought in bad faith as a matter of law because he knew, or should have known, that his deemed admissions precluded recovery. In the alternative, Perma Stone argues that the jury's finding that Merideth had not brought its counterclaim in bad faith or for the purpose of harassment was against the great weight and preponderance of the evidence.

TEX.BUS. & COMM.CODE ANN. § 17.50(c) (Vernon 1987) provides:

On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award the defendant reasonable and necessary attorney's fees and court cost.

This court held in *Brunstetter v. Southern*, 619 S.W.2d 557, 561 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.) that to prove a suit was instituted in bad faith or for the purpose of harassment, a defendant must show that the claim was motivated by a malicious or discriminatory purpose or a reckless disregard for the defendant's rights.

TEX.R.CIV.P. 97(d) provides: "[a] claim which either matured or was acquired by the pleader after filing his pleading may be presented as a counterclaim by amended pleading." Merideth's counterclaim was filed in advance of appellant's successful motion for summary judgment. Even though the admissions had been deemed admitted, the court could have permitted their withdrawal. TEX.R.CIV.P. 169(2). Given the fact that the trial court could have withdrawn the admissions, there has been no showing of bad faith or harassment on Merideth's part.

a compulsory counterclaim. Since we have held that the DTPA action was not severable; it

## PERMA STONE'S ATTORNEY FEES

Perma Stone contends that, as a matter of law, it was entitled to $12,000.00 in attorney fees, and alternatively, the jury's refusal to award it the attorney fees it requested is against the great weight and preponderance of the evidence. In considering no evidence points, which are questions of law, we consider only the evidence and reasonable inferences therefrom, which viewed in their most favorable light, supports the jury's finding, and we must reject all evidence or reasonable inferences to the contrary. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex. 1981). As to the insufficiency contention, we will not disturb a jury's finding on conflicting evidence if there is some evidence to support its verdict, unless that verdict is so overwhelmingly against the evidence as to shock the conscience or to show clearly that the conclusion reached was wrong or was the result of passion, prejudice, or improper motive. *Swinney v. Winters*, 532 S.W.2d 396, 406 (Tex.Civ.App.—San Antonio 1975, writ ref'd, n.r.e.).

In response to the jury's finding, the trial court awarded Perma Stone $9,500.00 in attorney fees in the sworn account action. Perma Stone called three expert witnesses to testify as to attorney fees, two of whom were the lawyers who tried the case. The other expert was also a lawyer.

■ The uncorroborated testimony of an interested witness does no more than raise a fact question. However, if their testimony is clear, direct, positive, and free of contradiction, and there are no circumstances that tend to cast suspicion on it, it must be accepted as true as a matter of law. *Jamison v. Sockwell*, 405 S.W.2d 618, 621 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.). The testimony here does not fall within the exception. There was a diversity of opinion as to the value and reasonableness of the attorneys' worth. One lawyer testified that his customary charge was $250 an hour, while another testified to charging $200 an hour, and a third testified

will not be necessary to rule on this point of error.

to charging $180 an hour. Merideth's lawyer testified that his customary hourly fee was $85. It was the jury's prerogative to evaluate all of the testimony and determine what constituted reasonable attorney fees. The jury was not limited to the testimony of the lawyers who tried the case. The court did not err in entering judgment based on the jury's determination.[4]

### THE FORECLOSURE

 Merideth, by cross point, contends that the trial court erred in granting foreclosure on Perma Stone's mechanic and materialman's lien because it did not prove it complied with TEX.PROP.CODE ANN. § 53.059 (Vernon 1984). Section 53.059 requires that the contract be filed with the clerk of the county in which the homestead is located.

Perma Stone's affidavit in support of its motion for summary states:

> Pursuant to Exhibit C to this affidavit, plaintiff perfected a lien on the property described in said Exhibit C and is entitled to an order of foreclosure of said lien against defendants on the property and improvements described in said Exhibit C.

Exhibit C reveals that the contract and lien affidavit were filed with the Bexar County Clerk. The contract legally describes Merideth's Bexar County property. After examining the affidavit and the exhibit, we find sufficient proof that the lien was filed in the county in which the property was situated. Since there was no summary judgment evidence to the contrary, we conclude that the lien was filed with the county clerk of the county in which the homestead was located. *Roland v. Equitable Trust Co.*, 584 S.W.2d 883, 884 (Tex.Civ. App.—San Antonio 1979, writ ref'd n.r.e.); *A & S Electrical Contractors, Inc. v. Fischer*, 622 S.W.2d 601, 603 (Tex.Civ.App. —Tyler 1981, no writ).

The judgment of the trial court awarding damages to Merideth on the DTPA action and attorney fees is reversed; judgment is rendered that Merideth take nothing by way of his counterclaim. The remainder of the trial court's judgment is affirmed.

---

**4.** In view of our disposition of Merideth's DTPA action, it is not necessary for us to address Perma Stone's point of error regarding the failure to notify it of Merideth's expert witnesses.