**TRANSIT MANAGEMENT COMPANY OF LAREDO, Appellant,**

v.

**Robert SANCHEZ, Jr., Appellee.**

No. 04–93–00455–CV.

Court of Appeals of Texas, San Antonio.

Sept. 7, 1994.

Jose Salvador Tellez, City Atty., Jerry Bruce Cain, Asst. City Atty., Laredo, for appellant.

Molly Higgins–Santos, Law Offices of Molly Higgins–Santos, Ron H. Mata, San Antonio, for appellee.

Before CHAPA, C.J., and LOPEZ and STONE, JJ.

## OPINION

STONE, Justice.

Appellee Sanchez was a wheelchair-bound passenger on a bus operated by appellant Transit Management Company of Laredo (Transit). Sanchez brought suit against Transit alleging negligence in the maintenance and operation of a wheelchair lift used for loading and unloading handicapped passengers, when oil spewed from a ruptured hydraulic hose on the lift causing a burn and subsequent skin discoloration on Sanchez' right cheek. The case was tried to a jury and judgment was entered in favor of Sanchez in the amount of $12,500. We affirm.

■ Transit contends there is no evidence of its negligence to support the jury's verdict. In considering a no evidence or legal sufficiency point, we consider only the evidence favorable to the challenged jury finding and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988).

■ Alternatively, Transit argues that the evidence of negligence is factually insufficient. In considering a factual sufficiency point, we assess all the evidence and reverse only if the verdict is based upon so little evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Perma Stone–Surfa Shield Co. v. Merideth,* 752 S.W.2d 224, 227 (Tex.App.—San Antonio 1988, no writ).

■ Negligence occurs when the defendant's breach of a duty it owes to a plaintiff proximately causes harm to that plaintiff. *Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984). Under Texas law, a bus company, as a carrier of passengers, has a duty to exercise such a high degree of foresight as to

possible dangers and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent persons in the same or similar circumstances. *City of Dallas v. Jackson,* 450 S.W.2d 62, 63 (Tex.1970).

■ The record reveals that on October 31, 1987, Transit was the operator of the municipal transit system in the city of Laredo. Only two of Transit's buses were equipped with wheelchair lifts for the loading and unloading of handicapped passengers. During the morning, Sanchez was loaded onto one of these two buses by the use of the wheelchair lift.[1] The bus carried Sanchez, his aunt, and his cousin to a local shopping mall, where he was unloaded by the wheelchair lift. At 4:45 p.m. the same bus arrived to transport Sanchez back to his home. As the wheelchair lift was being lowered, a hydraulic hose line burst and oil leaked onto the ground. The leak incapacitated the lift.

The other of the two buses was then dispatched to pick up Sanchez. This bus also carried a supervisor and a mechanic. When this second bus arrived at Sanchez's residence, the lift did not work, so the driver used the auxiliary controls. A hydraulic hose ruptured in the box housing these controls, causing oil to spurt onto the bus driver and Sanchez, burning Sanchez' face and lower lip.

Several witnesses testified regarding the events of that day and the operations of Transit's maintenance department. Perhaps the most telling evidence of negligence came from the testimony of the Transit employees themselves. No one seemed to be responsible for the maintenance of the hoses which burst. Transit said in its response to interrogatories that its serviceman Martin Rojas was responsible for the maintenance of the hydraulic lifts. Transit's general manager, Ricardo Pulido, verified this. Mr. Rojas, however, said that inspecting the lifts was not his job. Rojas was present when the second hose burst on October 31, 1987, but could not testify as to the cause. He said that he would repair the hydraulic hoses "if there was something wrong with them," yet he had never inspected them. Rojas also said that he had no idea if the hydraulic hoses had ever been serviced or replaced.

Luis Jorge Collazo, who was charged with inspecting the hydraulic lift, said that it was not his job to inspect the hoses, so he did not do so. Not only did the individual employees lack any knowledge of when and if the hoses were ever inspected, but there were no records of any kind of maintenance schedule. Pulido testified that Transit had records, but the records were destroyed in 1989 when the maintenance system was computerized.

Conversely, Transit's general manager of maintenance, Joe Jackson, testified that Transit did not even keep maintenance records until 1989, two years after the accident. Jackson was not employed by Transit at the time of the occurrence in question. He said there is no particular age at which hoses may break, and even new hoses will break, though they appear to be in good condition from an external visual inspection. Therefore, Transit does not have a policy of replacing the hydraulic hoses at a specified time. Jackson acknowledged that there was no documentation showing that the hoses were inspected back in 1987. Both Joe Jackson and Martin Rojas testified that hoses are more likely than not to break from normal wear and tear. At the time of the accident the buses were five years old.

One of Transit's supervisors, Luis Collazo, visually inspected the exterior of each bus as it was dispatched. He said that in 1987 a pre-trip inspection of the hydraulic lift system was required and the lift was given a "run-through" to see if it could make a complete cycle. Such "run-throughs," however, apparently did not include inspecting the parts.

Transit's acting foreman, Francisco Navarro, Jr., testified that as part of his duties he serviced coaches, and did maintenance and periodic inspections of the buses. He stated that in 1987 the wheelchair lifts were inspected periodically and that the inspection forms were turned into Ben Garza, who was no longer employed by Transit. Navarro said he made no attempt to locate those forms

---

1. Although there is conflicting testimony as to which of the two buses were used at which time, it is not disputed that both buses were used for transporting Sanchez on October 31, 1987.

because Garza was no longer employed by Transit and took all such paper work with him when he left.

The jury was free to conclude from all this conflicting evidence that the hydraulic lifts were not inspected properly, and that the maintenance department was, at best, unorganized. From this record the jury could properly determine that Transit failed to exercise the high degree of care imposed by law upon common carriers. *See City of Dallas v. Jackson,* 450 S.W.2d at 63. We cannot say that the jury's decision was based upon either legally or factually insufficient evidence. Appellant's points of error one and two are overruled.

■ Appellant also contends that there is no evidence, or alternatively insufficient evidence, of mental anguish or disfigurement. The jury was presented with one damage question which allowed it to consider physical pain, mental anguish, and disfigurement. Although Appellant would like for us to break the award down into its various components and consider the jury's scribbling out to the side, it would be improper for us to engage in such conjecture. The jury gave one answer, awarding Sanchez $12,500. The question was properly worded pursuant to the Texas Pattern Jury Charge and the jury could properly consider all three elements since Sanchez presented evidence as to each.

Sanchez testified that he was in pain for several months, the hydraulic fluid caused his lip to bleed, the attitude of the employees toward his injury left him feeling like he was not even human and did not exist, and the discoloration on his skin appeared only after he was burned. His testimony was uncontroverted and corroborated by two other witnesses.

■ Appellate courts must not substitute their judgment for that of the trier of fact "unless the record clearly indicates that the award was based upon passion, prejudice, or improper motive, or is so excessive as to shock the conscience of this Court." *Levinge Corp. v. Ledezma,* 752 S.W.2d 641, 645 (Tex. App.—Houston [1st. Dist.] 1988, no writ). Mental anguish can include grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. *Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.App.—Corpus Christi 1979, no writ). Texas courts have generally left the valuation of mental anguish to the fact finder. *National Union Fire Ins. Co. v. Dominguez,* 793 S.W.2d 66, 73 (Tex.App.—El Paso 1990, reversed on other grounds, 873 S.W.2d 373 (Tex.1994)); *Coastal States Gas Producing Co. v. Locker,* 436 S.W.2d 592, 599 (Tex. App.—Houston [14th Dist.] 1968, no writ).

■ Disfigurement has been defined as "that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." *Goldman v. Torres,* 161 Tex. 437, 341 S.W.2d 154, 160 (1960). A discoloration on one's face certainly meets this definition.

■ Although appellant contends that expert testimony is required to uphold an award for disfigurement, this is not the law in Texas when the issue to be decided is within the common knowledge of lay men. Even in cases where lay testimony conflicts with expert testimony, the jury is entitled to rely upon the lay testimony. *Texas Employers' Ins. Ass'n v. Price,* 336 S.W.2d 304, 308 (Tex.App.—Eastland 1960, writ ref'd n.r.e.). Evidence was presented from a medical doctor who stated that it was possible that a burn was the cause of the discoloration on Sanchez' face. Sanchez said that the discoloration appeared only after he was burned and the jury was shown the discoloration. We believe this was sufficient evidence from which the jury could make its award.

Appellant's points of error three through seven are overruled and the jury verdict is affirmed.