# NO. 12-12-00435-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF T.G.,* | § | *APPEAL FROM THE THIRD* |
| *A.G., AND A.H.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

T.G. appeals the termination of his parental rights to his child, T.G.2.[1]  T.G. raises one issue on appeal.  We affirm.

## BACKGROUND

T.G. and J.H. are the parents of T.G.2., who was born on May 2, 2006.  On December 10, 2010, the Department of Family and Protective Services (the Department or CPS) filed a petition for protection of T.G.2., A.G., and A.H. (the children), for conservatorship, and for termination in a suit affecting the parent-child relationship.  On December 14, 2010, the trial court signed an emergency order naming the Department as temporary sole managing conservator of the children.  On December 21, 2010, an adversary hearing was held, and the trial court appointed the Department as temporary managing conservator of the children and T.G. and J.H. as temporary possessory conservators of the children.

On June 11, 2012, a bench trial was continued until July 20, 2012.  Paternity tests revealed that T.G. was not the biological father of A.G. or A.H.  Ultimately, the trial court terminated J.H.'s parental rights to all three children and terminated T.G.'s parental rights to T.G.2.  J.H. did not appeal.

---

[1] The initials of the father and the child are the same.  Therefore, we will refer to the father as T.G. and his child as T.G.2.

In his sole issue, T.G. argues that the trial court erred by denying his oral motion for "separate trials" after J.H. was held in contempt and removed from the courtroom.

## Applicable Law and Standard of Review

In his brief, T.G. contends that separate trials were required in order to prevent prejudice. T.G.'s argument on appeal suggests that if facts are not "interwoven," separate trials must necessarily be ordered. This contention conflates some of the rules of severability with separate trials. Even though T.G. did not request a severance, in the interest of justice, we will distinguish severance from separate trials and address each as they relate to T.G.'s argument.

### *Severance*

Rule 41 of the Texas Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. ***Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.***, 793 S.W.2d 652, 658 (Tex. 1990). A severance divides the lawsuit into two or more independent causes, each of which terminates in a separate, final, and enforceable judgment. ***Kansas Univ. Endowment Ass'n v. King***, 350 S.W.2d 11, 19 (Tex. 1961).

Severance is appropriate if a controversy involves two or more separate and distinct causes of action, each of which might constitute a complete lawsuit. ***Rodarte v. Cox***, 828 S.W.2d 65, 71 (Tex. App.—Tyler 1991, writ denied). A termination suit is separate from any other suit affecting the parent-child relationship, and a termination judgment is a final, appealable judgment. ***Id.*** Whether a severance should be granted is within the discretion of the trial judge, and his order will be disturbed only upon a showing of an abuse of discretion. ***Id.***

A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. ***Guaranty Fed. Sav. Bank***, 793 S.W.2d at 658; ***In re E.A.G.***, 373 S.W.3d 129, 148 (Tex. App.—San Antonio 2012, pet. denied); ***In re J.W.***, 113 S.W.3d 605, 611 (Tex. App.—Dallas 2003, pet. denied).

*Separate Trials*

Rule 174 of the Texas Rules of Civil Procedure provides that a court "in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." TEX. R. CIV. P. 174(b); *In re B.L.D.*, 113 S.W.3d 340, 346 (Tex. 2003) (trial court may order separate trials to avoid prejudice). "A severable cause of action may be tried separately under the provisions of Rule 174, but an issue that might properly be the subject of a separate trial is not necessarily severable." *Kansas Univ. Endowment Ass'n*, 350 S.W.2d at 19. We also review a trial court's denial of a motion to order separate trials for abuse of discretion. *See Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 556 (Tex. 2004); *In re E.R.*, No. 02-04-117-CV, 2005 WL 327263, at \*8 (Tex. App.—Fort Worth Feb. 10, 2005, no pet.) (mem. op.). An abuse of discretion in denying a motion for separate trials occurs

> [w]hen all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby. . . .

*Womack v. Berry*, 291 S.W.2d 677, 683 (Tex. 1956).

Thus, the differences between Rules 41 and 174(b) are that severance divides the lawsuit into two or more independent causes, each of which terminates in a separate, final, and enforceable judgment. *Kansas Univ. Endowment Ass'n*, 350 S.W.2d at 19. The separate trial results in an interlocutory order determining the claims or issues so tried, but there is only one final judgment that is entered after all claims and issues involved in the suit have been tried. *Id.*

**Discussion**

T.G. contends that separate trials should have been ordered because the facts and issues relating to J.H.'s termination were not interwoven with those relating to the termination of his parental rights. Thus, T.G. contends he was prejudiced and unable to "put on a proper defense."

3

*Requirement that Claims Not be "Interwoven"*

To be entitled to severance, the third prong of the severability test requires that the claim must not be "so interwoven with the remaining action that they involve the same facts and issues." *Guaranty Fed. Sav. Bank*, 793 S.W.2d at 658.

Here, the issue to be resolved against T.G. and J.H. was the same—whether their respective parental rights to T.G.2. should be terminated. *See In re J.W.*, 113 S.W.3d at 611-12. The Department's petition alleged the same grounds for termination of each parent's parental rights under Section 161.001 of the family code. And the facts supporting the Department's grounds for terminating T.G. and J.H.'s parental rights pursuant to subsections (1)(E) and (2), Section 161.001 of the family code, show that one parent's endangering conduct often related to the other parent's endangering conduct.

According to the evidence, the children were removed in December 2010 while T.G. was incarcerated. The removal stemmed from an intake report generated in July 2010 alleging physical abuse of the children by their maternal grandmother. The Department did not make contact with the children, however, because "they were jumping . . . from county to county." Finally, the children were located in Mabank after the Department conducted a tier search that revealed the children were offered or had received services through health and human services.

J.H. and the children were found living with T.G.'s father. The investigator for the Department described the home as having "a rodent problem," "clothes all over the home," a "foul odor," and roaches "all over the walls." In determining whether to conduct an emergency removal of the children, the investigator took into consideration J.H. and T.G.'s prior CPS history, and T.G.'s criminal history.

J.H.'s first CPS case occurred in 2004 upon the birth of A.H. At the time, T.G. was believed to be A.H.'s father. When the Department responded to the intake alleging that J.H. used methamphetamines the week before A.H.'s birth, it could not place A.H. with T.G. because he was incarcerated. When A.H. was approximately six months old and T.G. was released, the Department returned A.H. to J.H. and T.G.

J.H. and T.G.'s most recent CPS history revealed that on March 17, 2009, CPS received an intake alleging physical abuse of the newborn child, A.D.G., because J.H. used methamphetamines the day before A.D.G. was born. J.H. and T.G. both admitted to using

4

methamphetamines throughout J.H.'s pregnancy while the children were in the home.  Because the children were staying with their maternal grandmother at the time of the report and did not appear to be at risk, they remained in their grandmother's care.  Ultimately, the Department filed a petition seeking termination of J.H. and T.G.'s parental rights to A.D.G.  While A.D.G. was in the Department's care, T.G. was arrested and incarcerated for three months.  He was released in September 2009, but neither he nor J.H. appeared at A.D.G.'s termination trial.  On December 14, 2009, the trial court terminated J.H and T.G.'s parental rights to A.D.G.

T.G.'s criminal history also involved drug abuse.  In his own words, T.G. described his criminal history as "too much to list."  T.G.'s first drug-related conviction dates back to 1987.  But despite being incarcerated during his youngest child's birth in 2009 and ultimately having his parental rights terminated, T.G. continued to engage in criminal conduct by using methamphetamines.   Just as A.D.G.'s removal occurred when T.G. was incarcerated, the removal of the children in the current case also occurred when T.G. was incarcerated.  T.G. testified that when he "first got arrested back in 2010, I didn't know where my children were."  Once the children were removed, J.H. was able to begin her service plan shortly thereafter.  T.G. did not begin his service plan, however, because he entered substance abuse felony punishment (SAFP) in February 2011.[2]

Testimony at trial revealed that J.H. did not fulfill the Department's service plan, but that T.G. had complied substantially more than J.H. once he was released from SAFP (which included living in a halfway house until January 31, 2012).  Nevertheless, the trial court found that both parents failed to comply with their service plans.

A multitude of grounds can be used to terminate a person's parental rights to his or her children, and trial courts often terminate a parent's rights on more than one ground as the trial court did in this case.  *See* TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2012); *see, e.g.*, **In re D.M.**, 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no pet.) (declining to address sufficiency of evidence relating to termination under subsection 161.001(1)(D) because evidence was sufficient under subsection (E) and only one finding is necessary).   The trial court

---

[2] SAFP is an in-prison therapeutic community that offers treatment for offenders with issues related to drug addiction.

terminated J.H.'s parental rights pursuant to subsections (1)(E), (1)(N), and (1)(O), Section 161.001 of the family code.[3] The trial court terminated T.G.'s parental rights pursuant to subsections (1)(E) and (1)(O), Section 161.001 of the family code.

J.H. and T.G.'s admitted methamphetamine use, J.H.'s inability to provide a safe environment for the children on her own, and T.G.'s repeated incarcerations support the Department's contention that T.G. engaged in conduct that endangered the children's well being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E) (West Supp. 2012). These facts were also relevant to the issue of whether termination of J.H. and T.G.'s parental rights was in T.G.2.'s best interest because the children were often left with J.H. when T.G. was incarcerated. *See* TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012); TEX. FAM. CODE ANN. § 263.307 (West 2008); *see also In re C.H.*, 89 S.W.3d 17, 28-29 (Tex. 2002) (evidence supporting termination may also support finding that termination is in child's best interest); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (listing best interest factors). Both J.H. and T.G.'s conduct showed that neither parent had the ability to provide a safe environment on a long-term basis, either when the parents were together (when T.G. was not incarcerated) or when they were alone. The evidence also showed that both parents lacked adequate support from family to help them attain a safe environment for their children—J.H.'s mother had CPS history and was alleged to have

---

[3] The applicable grounds for termination found in Section 161.001(1) provide that a parent's rights may be terminated if the court finds by clear and convincing evidence that the parent has

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well[ ]being of the child;
> . . . .
>
> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department . . . and:
>> (i) the department . . . has made reasonable efforts to return the child to the parent;
>> (ii) the parent has not regularly visited or maintained significant contact with the child; and
>> (iii) the parent has demonstrated an inability to provide the child with a safe environment;
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

TEX. FAM. CODE ANN. § 161.001(1) (E), (N), (O) (West Supp. 2012).

physically abused the children in July 2010 and the housing provided by T.G.'s father created unsanitary living conditions for the children. *See generally* TEX. FAM. CODE ANN. § 263.307; *Holley*, 544 S.W.2d at 371-72. After reviewing the entire record, we conclude that the Department's case against J.H. and T.G. was not properly severable because the two cases involved the same facts and issues and, therefore were intertwined. *See Guaranty Fed. Sav. Bank*, 793 S.W.2d at 658.

*Requirement of Manifest Injustice*

T.G. argues that separate trials should have been ordered because trying the cases "at the same time as [J.H.'s] fiasco . . . unfairly prejudiced [T.G.] to put on a proper defense."

The record shows three direct references to J.H.'s behavior during trial. The first reference to J.H.'s in-court behavior occurred during the testimony of the Department's first witness. The trial court admonished J.H. not to be "thrashing around" during testimony. J.H. continued to engage in distracting behavior that prompted a second warning from the trial court. The trial court warned,

> And I'm going to go ahead and tell you what's going to happen. If I hear you again with some type of outburst of emotion like you've been doing all morning, I'm going to hold you in contempt, you're going to go to jail.

No references to J.H.'s conduct were made during T.G.'s testimony. J.H. made her final outburst, stating, "I don't want to stay in here[;] that hurts me," when one of the caseworkers testified that J.H. had missed a visitation due to the death of her father. Once J.H. was removed from the courtroom, T.G.'s attorney made an oral motion for separate trials, which the trial court denied. The trial court then stated,

> [F]or the record so that it's clear . . . I've been I think very patient with [J.H.] who has continually had outburst[s] in the courtroom. I've warned her about it. I think it was pretty unequivocal [that] I didn't want to see it any more. . . . I've looked the other [way] while she's continued to do it. Now she has jumped up and ran out of the front door, further disrupting the courtroom. I find her in contempt, and with regard to the sentence I'll give that some thought. And she'll be brought back in, if we need to make an attempt for her to testify, we might make an attempt to allow her to testify if her behavior is okay. So, we'll cross that bridge when we come to it. She's now not in the courtroom, been taken into custody.

7

Despite J.H.'s outbursts, the record does not reveal that T.G. was prejudiced by her conduct. During T.G.'s testimony (and prior to J.H.'s being held in contempt), the trial court interrupted T.G.'s cross-examination about his service plan. The trial court stated,

> I can tell that through all the letters that he's written throughout, that he is unlike a lot of parents in the fact that he expresses an interest. He sent the letters, he goes to the visitations, he's tried to do the service plan as best he can once he got out. That's not my real concern about the case.
>
> . . . .
>
> [T]he best indicator of future behavior is past behavior, and you've heard it many times. And this is a four-decade long criminal career. Those are the issues. And I'm not trying to cut off your cross-examination, but I guess what I'm saying is, I don't need to hear that, I think he's done well on the service plan. . . . Looks like he successfully completed SAFP, and has obviously expressed an interest in his kids . . . . It's the struggle with all of the other things that happened prior to it, and in—you know, consideration of what's in the best interest of the children is the difficulty that I have with him. But I just throw that out there, and you can approach it how you like, but I think everybody's in agreement.

T.G.'s attorney responded by stating that

> there's nothing I don't think we can offer. . . . I can have [T.G.] say I promise Judge, and [the Department is] going to say are you sure [T.G.], and we can do this for twenty minutes. . . . [Y]ou've completely summed up our argument, so I'm willing to pass the witness, Your Honor.

After hearing testimony about the children's relationship with T.G.'s oldest children and their aunts and uncles, the trial court also questioned T.G.[4] The trial court's questioning revealed that T.G.'s relationship with his three oldest children involved somewhat sporadic visitation with little involvement in their lives.[5] Upon hearing T.G.'s responses, the trial court stated,

> You see the problem I have? You want to keep a relationship with your kids, but you don't really seem to want to be a parent to them. You just want to have an outside relationship.

---

[4] T.G. had three other children from a previous relationship that were not the subject of this suit.

[5] T.G. testified that his oldest son played in a local church band, but that he had never attended the services to see him perform. He also confirmed that he did not know which high school his fourteen-year-old daughter attended, any of her teachers' names, or which church she attended.

The trial court's concern was confirmed by the Department's last witness who testified that once T.G. was released from SAFP, he never called to check on the children's welfare. T.G. only called to schedule a monthly visit with the children, and when he had visits with the children, A.H. and T.G.2. referred to T.G. by his first name.

There is nothing in the record that shows T.G. was prevented from presenting his defense. To the contrary, it appears that T.G.'s defense was that termination would not be in T.G.2.'s best interest because T.G.2. enjoyed his visits with T.G., T.G.2. was "connected" with members of T.G.'s family, and T.G. was reformed as a result of the programs he attended and completed as part of the service plan and felony probation.

After reviewing all of the facts and circumstances of this case, we cannot conclude that a separate trial was unquestionably required to prevent manifest injustice against T.G. *See Womack*, 291 S.W.2d at 683. The record does not reveal that the trial court heard evidence that it would not have heard had J.H. not been held in contempt. *See In re J.L.*, No. 09-10-00170-CV, 2011 WL 662941, at *2 (Tex. App.—Beaumont Feb. 24, 2011, no pet.) (mem. op. ) (record did not show that jury heard evidence it would not have heard had separate trials been ordered). Although J.H.'s behavior was distracting (and perhaps even frustrating) to the trial court, this does not amount to "manifest injustice" as there was no challenge to the sufficiency of the evidence supporting termination of T.G.'s parental rights. *See Womack*, 291 S.W.2d at 683; *see also* TEX. R. APP. P. 44.1(a).[6]

## Conclusion

The Department's claims relating to T.G.'s termination of his parental rights were interwoven with its claims relating to the termination of J.H.'s parental rights. *See In re J.W.*, 113 S.W.3d at 612. Furthermore, the trial court's denial of T.G.'s motion for separate trials did

---

[6] Rule 44.1(a) provides,

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:
  (1) probably caused the rendition of an improper judgment; or
  (2) probably prevented the appellant from properly presenting the case to the court of appeals.

TEX. R. APP. P. 44.1(a).

not create "manifest injustice," nor did it "unfairly prejudice[]" T.G.'s ability to put on a proper defense. *See Womack*, 291 S.W.2d at 683. Thus, the trial court did not abuse its discretion in denying T.G.'s motion for separate trials. Accordingly, we overrule T.G.'s sole issue on appeal.

## DISPOSITION

Having overruled T.G.'s sole issue, we ***affirm*** the judgment of the trial court.

## SAM GRIFFITH
Justice

Opinion delivered May 31, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

## MAY 31, 2013

## NO. 12-12-00435-CV

## IN THE INTEREST OF T.G., A.G., AND A.H., CHILDREN

---

Appeal from the 3rd Judicial District Court
of Henderson County, Texas. (Tr.Ct.No. 2010C-1527)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*